Thomas Dale **SIEBER**, Plaintiff

v.

**HAVANA HARRY'S II, INC.,** Defendant.

Case No. 08–21086–CIV.

United States District Court, S.D. Florida, Miami Division.

March 31, 2009.

Stephen Matthew Bander, Bander & Associates PA, Miami, FL, for Plaintiff.

Gordon Charles Watt, Coral Gables, FL, for Defendant.

Daniel K. Crane–Hirsch, U.S. Department of Justice, Office of Consumer Litigation, Washington, DC, Maureen Donlan, U.S. Attorney's Office, Miami, FL, for United States of America, Intervenor–Plaintiff.

## ORDER GRANTING IN PART MOTION TO DISMISS

ADALBERTO JORDAN, District Judge.

Mr. Sieber filed this lawsuit under the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c, after Havana Harry's allegedly printed his credit card receipt without redacting the card's expiration date. Havana Harry's moved to dismiss the amended complaint. Having considered the briefs of all the parties, Havana Harry's motion to dismiss [D.E. 8] is now GRANTED IN PART.

### I. BACKGROUND

As part of its effort to combat identify theft, Congress passed FACTA in 2003. Among other provisions, FACTA prohibits merchants from printing "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." *See* 15 U.S.C. § 1681c(g)(1). A plaintiff who establishes a willful violation of this prohibition may recover punitive damages, attorney's fees, and the greater of the actual damages sustained as a result of the violation or statutory damages ranging from $100–$1000. *See* 15 U.S.C. § 1681n(a). Where a plaintiff can show only a negligent FACTA violation, recovery is limited to actual damages and attorney's fees. *See* 15 U.S.C. § 1681o(a).

Almost immediately after Congress' deadline for compliance with FACTA's substantive provisions, scores of class action lawsuits were filed—many against small businesses—with purported class representatives bringing claims on behalf of those who eschewed recovery of actual damages under § 1681n, and instead sought to recover statutory and punitive damages. *See Grimes v. Rave Motion Pictures Birmingham, LLC,* 552 F.Supp.2d 1302, 1303–04 (N.D.Ala.2008).

These suits were met with varying degrees of contempt from district courts, the national business lobby, and Congress. *See Id.* at 1309 (bemoaning the destructive effects of § 1681n and characterizing the many FACTA class actions as "a great waste of judicial time and effort"); Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"), Pub.L. No. 110–241, § 2(a)(7), 122 Stat. 1565, 1565–66 (2008) ("Despite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit.").

With the passage of the Clarification Act, Congress determined that proper truncation of credit card numbers, even in the absence of redaction of expiration dates, would provide sufficient protection against identity theft without imposing an undue burden on retail businesses. *See* Clarification Act § 2(a). In relevant part, the Clarification Act precluded claims for willful noncompliance based only on a merchant's failure to redact an expiration date from a credit card receipt for any transaction occurring between December 4, 2004, and June 3, 2008. *See* 15 U.S.C. § 1681n(d). Congress specified that the amendment applied "to any action, other than an action which has become final, ... without regard to whether such action is brought before or after the date of the enactment of this Act." *See* Clarification Act § 3(b).

The Clarification Act went into effect after this case was filed, but before Havana Harry's filed an answer. On June 18, 2008—two weeks after the Clarification Act was signed into law—Havana Harry's moved to dismiss the complaint relying on the statutory language of FACTA as amended by Congress. Mr. Sieber responded by arguing that the amendment was invalid in that it violated the separation of powers under the Constitution. The United States then intervened to defend the constitutionality of the act and filed a brief in support of the motion to dismiss.

## II. ANALYSIS

It is axiomatic in our tripartite system of government that each constitutional branch must check and balance the others without encroaching on an exclusively delegated sphere of power. In *United States v. Klein,* 80 U.S. 128, 147–48, 13 Wall. 128, 20 L.Ed. 519 (1872), the Supreme Court found that Congress violated this doctrine of separation of powers by passing a law that invaded the province of both the executive and judicial branches. The law at issue purported to repeal a series of conditional pardons issued by Presidents Lincoln and Johnson during and after the Civil War to those who renounced the Confederacy and took an oath of loyalty to the United States. As applied to pardoned former members of the Confederacy attempting to gain recompense for property confiscated by the government during the war, the statute directed courts to treat the pardons as conclusive evidence of guilt of rebellion against the United States, thus justifying the seizure and mandating dismissal of the claim. Congress also deprived the Supreme Court of its appellate jurisdiction over these cases. *See id.* at 142–44. In invalidating the statute, the Supreme Court determined that Congress had overstepped its bounds by forcing a "rule of decision" on the judiciary that impermissibly directed findings and results in particular cases.

In the 100–odd years since *Klein,* however, the Supreme Court has greatly tempered its application. For example, in *Robertson v. Seattle Audubon Soc'y,* 503 U.S. 429, 441, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), the Supreme Court reversed the

Ninth Circuit's invalidation of a statute prescribing guidelines for timber harvesting in the Pacific Northwest. The statute at issue, popularly known as the Northwest Timber Compromise, was intended to modify the federal environmental protection laws regulating timber harvesting in a number of national forests that contained the northern spotted owl, an endangered species. Prior to the Compromise, the federal regulations protecting the owls spawned three lawsuits pitting environmental groups seeking to expand the restrictions against logging companies that objected to their breadth. The Compromise sought to settle these disputes by expressly stating that the loggers' compliance with two newly promulgated environmental regulations would be "adequate consideration for the purpose of meeting the statutory requirements that are the basis for the [three cases then pending in federal district courts]." *See* Northwest Timber Compromise, § 318(b)(6)(A). With the environmentalists' claims clearly foreclosed by the Compromise, all three cases were dismissed. The environmentalists then appealed the constitutionality of the Compromise on the basis that it directed a rule of decision on the courts in violation of *Klein.* Whereas the Ninth Circuit found that the Compromise constituted an impermissible encroachment by Congress on the dominion of the judiciary, the Supreme Court unanimously held that, because the statute effected a modification to existing law without directing factual findings on courts, it withstood constitutional scrutiny. Thus, *Robertson* gives Congress wide authority to modify existing law, even where the amendment has a dispositive effect on a particular pending case or cases.

 In light of this controlling principle, Mr. Sieber's challenge to the constitutionality of the Clarification Act is without merit. His primary argument in opposition to the motion to dismiss is that the Clarification Act directs how courts should interpret willfulness for a particular group of cases. Although this assertion is generally correct, it does nothing to invalidate the statute. The Clarification Act has the same effect on Mr. Sieber's FACT A claim as the Compromise had on the environmental litigation that it sought to resolve. Both laws applied retroactively, and without any prospective application, to cases already pending in federal district courts. More importantly, both stipulated that compliance with certain enumerated factors would extinguish a statutory cause of action that existed under federal law prior to the amendment. As long as such an amendment does not reopen a final judgment, *see Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 240, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), it does not violate the separation of powers principle.

Outside of *Klein,* the only case cited by Mr. Sieber in support of his position was the opinion of Judge Birch specially concurring in the Eleventh Circuit's denial of the petition for rehearing en banc in *Schiavo ex rel. Schindler v. Schiavo,* 404 F.3d 1270, 1271 (11th Cir.2005). But Judge Birch's opinion provides no help to Mr. Sieber. First, the opinion was Judge Birch's alone, and—while eloquent—it did not represent the view of any other member of the Court, and is therefore not to be viewed as binding Eleventh Circuit precedent. Second, and more importantly, the opinion deals with issues distinguishable from those here. The congressional act opposed by Judge Birch did not modify any existing law, but rather vested the Middle District of Florida with jurisdiction to hear a particular case without the ability to consider certain of the litigants' arguments proscribed by Congress. *See id.* at 1272–74. That is not what Congress did with the Clarification Act at issue here.

 To the contrary, the Clarification Act reflects Congress' view that FACTA

went too far in subjecting small businesses to potentially crippling class action lawsuits where only an expiration date was printed on an otherwise redacted credit card receipt. *Robertson* reflects the principle that, consistent with the constitutional separation of powers, Congress—as the branch most accountable to the electorate—has the inherent power to fix its mistakes. To the extent that such a correction requires legislation by retroactive definition, it does not run afoul of the Constitution. *See, e.g., Rivers v. Roadway Express,* 511 U.S. 298, 308, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) ("Altering statutory definitions, or adding new definitions of terms previously undefined, is a common way of amending statutes."). I therefore conclude that the Clarification Act was a permissible exercise of congressional power, and that FACTA—as amended—forecloses Mr. Sieber's claim alleging a willful violation of the act. *See Barbieri v. Redstone Am. Grill, Inc.,* No. 07–5758–Civ, 2009 WL 290467, at *4–*5 (N.D.Ill. Feb. 6, 2009).

### III. CONCLUSION

Havana Harry's motion to dismiss [D.E. 8] is GRANTED IN PART. Mr. Sieber's claim alleging a willful violation of FACTA is DISMISSED WITH PREJUDICE. I find, however, that Mr. Sieber adequately alleges a negligent violation of the act, and the restaurant's motion to dismiss this claim is DENIED.

Havana Harry's shall file its answer on or before April 13, 2009, and the parties shall file a joint scheduling report as required by Local Rule 16.1 by no later than April 20, 2009.